Hear ye, hear ye, this Honorable Appellate Court for the Second District is now open. The Honorable Justice George Bridges presiding, along with Justices Catherine E. Zinoff and Joseph E. Burkett. The case is number 220-380, Village of Hanover Park Plaintiff Appellant v. Board of Trustees of the Village of Hanover Park Police Pension Fund et al., Defendants Appellees. Arguing for the Appellant, Paul A. Denham. Arguing for the Appellees, Richard J. Reamer and Robert M. Zellick. Are all parties ready to proceed? Yes. Yes, Justice. Then you may proceed. Thank you, Justice. Good morning. May it please the Court. This is a dispute about whether the Village of Hanover Park Police officers earn holiday pay that can also be characterized as salary for pension purposes. Under Section 6.3 of the Village's Collective Bargaining Agreement with the Metropolitan Alliance of Police, officers' ability to receive holiday pay is conditional. In fact, the Village has produced uncontradicted evidence that 12 officers did not qualify for holiday pay during the time period from 2015 to 2018. According to the Illinois Administrative Code, compensation is considered salary for pension purposes if it is fixed and received regularly. The Code further defines fixed as meaning a payment in a predetermined amount, which can be determined through an examination of the appropriation ordinance, plans, or agreements establishing salary. Of course, under Section 6.3 of the CBA, holiday pay is not fixed, it's not predetermined, and it's not received regularly. Wasn't the Collective Bargaining Agreement revised, that is 6.2 revised, didn't that take care of this? No, it did not. Section 6.3 is the provision in the contract that actually talks about whether officers are eligible for holiday pay. Section 6.2, the change to 6.2 actually started this dispute in the sense that the union then filed a grievance to try to get some sort of opinion about pensionability. But the Village was very clear when it negotiated the changes to 6.2, as is evidenced in the arbitration award that's part of the record, that 6.3 is still on the books, and 6.3 is very clear that holiday pay is not fixed, it's not predetermined. It's based on the fact of whether officers actually work the full scheduled working day preceding or immediately following the day observed as holiday pay. In addition, the contract language expressly excludes employees from holiday pay who are suspended or are in a no-pay sick leave status, as well as individuals suffering from an on-duty disability or a duty disability in excess of six months, pension, or other inactive payroll status. Go ahead, I had a follow-up. All right, just a follow-up question. Should we, as an appellate court, reviewing the board's decision not give deference to the Department of Insurance Public Pension Division's opinion from 2015? No, you definitely should give deference to the 2015 decision of the Department of Insurance. Go ahead. There's also a record from 2013 where there was a conversation with the director of the Department of Insurance, that division, as well as the pension board president. And at that time, the Department of Insurance opined that based on Section 6.3, this type of holiday pay is not pensionable, as well as their explanation of that within the 2015 opinion letter. As well as, I think there are three other opinion letters which are on the record in other municipalities that have similar types of holiday pay provisions. So the Department of Insurance has actually been very consistent. I know that my colleagues for the union and the pension board will probably argue that there was a 2009 finding based on some sort of audit. However, I don't think that audit finding was ever finalized. It was certainly never enforced, and it certainly was never followed. Since 2009, all of the parties up until this point have been pretty consistent about their opinion about holiday pay as pensionability or non-pensionability. Sorry, your honor. Mr. Denham, were there findings by the pension board that holiday pay can be fixed? Wasn't there a finding that it can be determined? I think in the most recent administrative decision, which is up on appellate review, up on administrative review, they made some sort of finding. But it's simply not factually supported. During the hearing in front of the pension board, the village produced uncontradicted evidence that from 2015 to 2018, Section 6.3 was enforced, and officers did not receive holiday pay during those periods. I don't know how it can be considered fixed when it's all conditional on whether the officer either works the day before or the day after holiday pay. And keep in mind also that it also has to be received regularly. And it's certainly not received regularly when one officer is forfeiting or otherwise not receiving holiday pay in 2015, and they receive a different amount in 2016. Your answer so we can get our questions in, but does a seven-year period when the village did not enforce Section 6-3 demonstrate that the village waived that portion of the contract? No, it did not. In fact, the arbitration award expressly held that Section 6.3 is still in effect. And within our briefs, we also argue that this isn't really a question that is appropriate for this panel, for the courts. This is a question that actually an arbitrator would have the jurisdiction to hear. To the extent that the union feels like Section 6.3 is a nullity at this point, it would be the arbitrator's determination to effectively remove that contractual language from the CDA. And in this case, they tried to argue in front of the arbitrator that Section 6.3 was a nullity, and the arbitrator in his written decision said no, Section 6.3 is still there. It's in full force in effect. Are there any contested issues of fact here? I don't believe so. But what's your standard of review then? Well, this is an administrative review action. So typically, in terms of the, it's either manifest weight or clearly erroneous under that standard. However, I think we also have to look at the Roselle case to the extent that the Department of Insurance did issue its opinion on this. And you're supposed to give this significant deference. Is that standard? Council, doesn't Section 44.02 of the administrative code provide that all salary, including holiday pay, shall be used in pension calculations regardless of whether the employee has worked that holiday the day before or after? There is language to that effect. However, I think there's also language in. But my question is, what do you say about that section, 44.02? Well, the Department of Insurance has had a consistent, I mean, at the end of the day, there are all types of compensation given to police officers which are fixed and are not fixed. You could actually give fixed salary to a police officer, which, you know, you would think of salary being normal compensation as well. However, if it's a one-time lump sum bonus, the Department of Insurance has consistently held that that's not fixed, it's not received regularly. And under the other regulation about it being predetermined whether it's not pensionable, it's not salary for pension purposes. Here we have a situation where if unconditionally these police officers would receive holiday pay without any strings attached, they would receive that regularly, then yes, it would be considered salary for pension purposes. But the Department of Insurance has always defined its regulations, not just in terms of that regulation to be read, but also with respect to whether it's fixed and received regularly. Counsel, you agree that the Police Pension Board has the sole authority to determine an officer's salary for purposes of calculating their retirement pension. And since the village has no authority, why wouldn't we, why shouldn't this court, or rather, why wouldn't withholding the pension contributions as provided by the CBA? So why not consider it, withhold the contributions and consider it pensionable? Well, the change of 6.2 was on the issue of whether it should be withheld so the Pension Board could be asked this question about pensionability. In terms of, I think what you're asking is, why would we not just go along with the Pension Board's determination that 6.3 allows officers to have fixed and regularly received holiday pay when it doesn't? I think it's actually the Pension Board's authority to interpret the code, but they actually have to interpret the code. And here the code could not be clear that in order for compensation to be considered salary for pension purpose, it has to be fixed, and it has to be received regularly. And, oh, by the way, the Pension Board historically has always held that this type of holiday pay is not salary for pension purposes. It is only in recent times that they have issued this administrative decision, which flip-flopped this benefit that they've never pursued in the past. You raised a question, a threshold question regarding jurisdiction in your brief and argued that the 35-day deadline had passed. But isn't there a first district case, DeJesus v. Police Annuity Fund of Chicago from 2019 that actually provides two exceptions to these requirements, one of which actually does apply here? And that is the party challenging a systemic miscalculation can point to a specific rule from the Pension Board itself. Can't that be applied here? Well, I'm not sure if I'm familiar with DeJesus. I know that the countryside case, which was cited by the defendants at the earlier stage as well, I think is along those lines, too. My understanding of these systemic miscalculation cases is they usually give a municipality or some other vested interest the ability to challenge some sort of additional benefit. In this case, I think it's the opposite, where essentially you have employees and retirees who are trying to, and especially retirees, trying to change their salary calculation. And I think that's inappropriate. There are tons of cases that we quoted in the materials which talked about how a retiree doesn't get a second bite of the apple over 35 days after the salary calculation has been finalized. I mean, here you also have to keep in mind that the Pension Board has never taken that 9.91% from anyone's salary up until the time of this dispute. So participants have not been contributing in terms of their share of the pension. And based on the fact that it's not received regularly, there are individuals who have forfeited or otherwise have not received holiday pay who never have that withholding ticket from a pay because they never received that pay. During the seven-year period when the village was not enforcing Section 6.3, the village also did not withhold the pension package, correct? Well, yeah. I mean, first I'll make two points. First of all, that seven-year period, the contractual language actually has some sort of discretionary language in it. It doesn't say that you automatically forfeit. The village does have to enforce the forfeiture. I don't think that makes it any more fixed and not conditional. I mean, at the end of the day, once the village did enforce it, we have documented evidence that from 2015 to 2018, the same time period that's relevant to the challenge here, officers did not receive holiday pay. And I will also note the collective bargaining agreement also has a provision that talks about how there are no past practices, that all of the past practices go away once the contract is executed. So I don't know how you can argue that this alleged past practice somehow affects this documented forfeiture language in Section 6.3. It's always been there. So you may continue. Sure. After receiving the initial Department of Insurance findings in 2009 and 2010, the Pension Board never treated holiday pay as salary for pension purposes. In fact, on multiple occasions, the Pension Board rejected any inference or argument that holiday pay was pensionable. And ultimately, the Pension Board took formal action to declare that holiday pay could not be included in officer salary calculations. In addition to formally rejecting the 2009 audit findings, in October of 2013, the Pension Board took formal action to adopt a memorandum written by President George Sullivan stating that holiday pay is not pensionable. The record also includes opinions from the Pension Board's own accountants, Lauterbach and Amon, who share the interpretation that holiday pay cannot be considered salary for pension purposes, which is also mentioned in Sullivan's letter. Go ahead, Justice. Okay. Can you address the argument that we should not and the Pension Board should not have given way to the 2015 opinion from the Department of Insurance because the village did not disclose that they had not been enforcing 6.3 during that seven-year period? In other words, the information was incomplete, and therefore, the opinion is not reliable. Well, at the time of the opinion, the information was reliable because the village was enforcing that provision in 2015. Plus, in 2014, the parties executed a collective bargaining agreement, which actually said that all past practices go away upon execution of the collective bargaining agreement. So, any sort of argument that Section 6.3 was inactive or not been in effect prior to 2015 is actually not accurate as well. Was there ever any dispute as to the accuracy of President Sullivan's letter to the Department of Insurance where he discussed the conversation with Grant? Based on the record, from what I could tell, the Pension Board actually formally adopted President Sullivan's letter that summarized and memorialized his conversation in 2013. I don't know if it's an overreach, but the village argues that that's even a formal action because at that point, the Pension Board never withheld the 9.91% from current members' salaries, and it certainly didn't add this holiday pay in any sort of final salary calculation of retirees. So, from the record, as I could tell, the Pension Board went along and actually actively created a record of finding that holiday pay was not pensionable at that time. And then in 2015… Counsel, I apologize for interrupting, but your time is up. So, Justice Burkett, I believe you had another question. That's all right. Thank you. Justice Inhofe, do you have any additional questions? Not at this time. Thank you, Mr. Dunham. At the end of Apolli's argument, you will have an opportunity for rebuttal. At this time, Mr. Reimer, you have the ability to proceed now. Thank you. May it please the court, Mr. Dunham, Mr. Zoellick. As you know, my name is Richard Reimer. I represent MAP, which is the union in this case, as well as the five individual defendants in Apolli's in this case. I think it's really important to respond to some questions, and especially Justice Inhofe's question, weren't there modifications made to Section 6.2 of the Collective Bargaining Agreement? Absolutely. That was really what set into motion the chain of events that led us to be before you all here today. That didn't happen until the 2016 and 2013 contract term. So whatever happened in 2009 couldn't possibly be considered because these are all things that happened well after that. There was an excellent question by, should we give weight to the Illinois Department of Insurance advisory opinions? It's actually an excellent question. And I think all you need to do is look at the Zoell case. Unfortunately, that was my case. I lost that. And our Supreme Court said, yes, you have to give deference to interpretation by the regulator, the Illinois Department of Insurance, which to this day remains the regulator. But that was not an absolute opinion.  They should be given substantial weight unless they are arbitrary, capricious, or manifestly contrary to the statute. And that's exactly what happened here. 2015 DOI advisory opinion was issued at the request of the village. For whatever reason, the village didn't disclose significant material facts that it changed since the 2009 opinion and what happened in 2009. Mr. Reamer, the record shows that the Department of Insurance had this information in their file, does it not? They had that information in the file. Justice Paquette, I don't know. I don't believe when they wrote the January 28, 2015, I don't believe they were told that the village didn't enforce 6.3 for a period of seven years. I don't know that they were aware that other things had happened. I don't believe that's the case. What relevance does that have? During that seven-year period, they weren't withholding the contribution anyway. What relevance does that have? Well, keep in mind, Justice Paquette, they couldn't have withheld anything until the 2013-2016 contract was ratified. And right as soon as the ink was dry, we expected on behalf of the union that they would hold the 9.91%, which was the changes to 6.2. They didn't do it. That's what resulted in the grievance before Arbitrator Yeager. We are not, I know I'm not on behalf of the union asking you to, as this board, to declare a past practice. That's, I realize that's not within your jurisdiction, but it's a significant fact that was unknown to the Department of Insurance. And if you look at the DOI January 28, 2015 letter, there's a disclaimer in that letter. I think I would suggest to you I could drive a Mack truck through. It said, if the assertions made in your letters change or are not complete, the opinion below may no longer be appropriate given the new set of facts. And I think the DOI has kind of been all over the roadmap on this. Yes, Mr. Benham, other DOI advisory opinions, different pension funds where they hold this. I think the fundamental flaw in their logic. I've heard now in their rooms, I've heard. Yes, sir. I reduce. Bridges, how can you say holiday pay is fixed when you can't determine the amount by examining the salary agreement here. Just respectfully disagree with this. Here's how I can say that. We know how much we know there's nine paid holidays. We know the value of those nine paid holidays, so that extra compensation. We also know by the villages evidence introduced in the hearing that for the three years that they surveyed, there was, I think they said 12 people. What about the 45 or the 44 other persons every year that lived up to, but did not violated 6.3. They didn't call in sick. They were born after the holiday. They didn't get penalized, they got penalized, maybe because one or two outliers didn't follow the rules, but that doesn't mean they didn't earn holiday pay under 6.3. So even if you say, well, so let me just ask quickly. It can be calculated, but it has to be predetermined in order to be fixed isn't that correct. predetermined. I, well I, I have a different view obviously but this is why you're the court, you win. I believe that it is fixed. It's, I think what they're arguing here. This would be, we'd have to do some math. And it's very simple. I did that in a previous life, I know how much of officer makes. I know that there's nine holidays. They don't work the day before after, it's real simple. You don't withhold the 9.91%, and you don't get paid on that holiday history. In your brief on page 22 where you make the same argument about those are outliers. And you argue they should be black backed out and not punish the other officers, isn't this an admission on your part that holiday pay isn't fixed or predetermined as just as enough was getting to justice bridges, I don't believe it is. I believe this is, I think in fact if you look at 6.3, and that goes to a point earlier question by justice is okay 6.2, should we care, or somebody, one of you justice asked about what about 6.3, we can see 6.3 is in full force We're not disputing that, and only the negotiation process would give us the authority to remove that. We're not asking you to remove that, but nowhere in 6.3, does it require that all call it 47 officers have to meet the requirements of 6.3, why would we punish the ones that did what they were supposed to do. Mr. Reamer, you would agree that holiday pay is a benefit. Yes, Your Honor, I would. So you're using a benefit holiday pay to argue that officers who received that benefit should not be punished because other officers who did not receive that benefit did not get the benefit. That's your argument. You've heard the old adage, you can't turn a sow's ear into a sow's horse. You're taking the best practice of not recognizing holiday pay as fixed and trying to make it fixed because some other officers you say received the benefit are actually punished. That makes no sense. Well, you know, obviously, I would respectfully disagree. I think it is fixed. I think if you look at 6.3. By the way, let me come back because this whole premise is based on the administrative rules and regulations which counsel says is conditional. I would ask anybody to point me into the administrative rules and regulations that we're here about today. Show me anywhere where it uses the word conditional. It's not there. What it says is to make holiday pay pensionable. What it says what the rule provides is in order to be pensionable holiday pay must be paid by an officer whether they work the holiday or not, which we have there, unless they have an option. Option is the word used here and they use a specific example of option, meaning I don't get my pay. I want to put that in my comp time bank and take time off later. There's no conditional here. The language is not here. The DOI uses it, the auditor, the accountants use it, but that's not in the language of the legislature wanted this to be conditional. I would think they're very wise people. They could put that in there. They didn't do it. It's not conditional. There's no conditions here. They can't say I'm taking time off comp time, which is what usually happens. And that's usually the scenario that defeats holiday pay as being included as pension. Conditional, they can't put that money in, or option rather, they can't put that money in a retiree health savings account, which some do. And they can't put that money in a suction 115 trust, which is again something you see in contracts. Because we're talking about whether it's fixed or predetermined. Between 2015 and 2018, you had 10 officers who didn't receive holiday pay from a 47 officer police department. And doesn't that convincingly say that holiday pay isn't fixed, because you've got 10 officers between this time that have unexcused or excused but didn't comply with the CBA, and it's not pensionable. So it's, it's not fixed. Doesn't that make it convincingly clear that this is not fixed or predetermined. Justice Bridges, it doesn't to me, because I think we're neglecting everybody else that followed the rules and did it. I look at the plain language is 6.3 nowhere in it does it say all members of the bargaining unit have to follow those rules. What do you do about the people that did exactly what the village wanted them to do. That's the problem I have, I do believe it's fixed. Thank, thank you, Mr. Your time is up to either the justice have any additional questions of mystery. Yeah. You may proceed. Morning Justices Council. When the pension board receive this receive the material, and we're asked by the village attorney village for the union to present, make a presentation before the board. And at that time, joint materials were submitted agreed to, and the presentation was done at before the board. At that time, the issues concerning the unenforcement of 6.2 was not known. They're under the facts known and presented before the board in March of 2019. The board found that the administrative components as the holiday holiday pay as being pensionable were satisfied after hearing the arguments of both the union and, and the village. Now, it's been brought up about the reservations that trustee precedent, George Sullivan had surrounding the 2009 audit finding. But ultimately the board accepted that finding. When it concluded that holiday pay was pensionable should be considered as part of salary for pension purposes. And the board. Ultimately acted in accordance with that conclusion, as it did by finding holiday pay pensionable in its award. As to the board's consideration of the advisory. It's been pointed out before the court that it requires those that documentation requires a full disclosure of what the facts and the conditions and the events that took place, and they actually read the letter. indicates that expressly says in its language that if the assertions made in the letter change or are not complete opinion given below may no longer be appropriate, given the new set of facts. So by the time the board received this material. And even though there was some reservations about what you know the implication of the 2009 UI audit, not that they did not have all the information available to them, which they found. Obviously, compelling enough to make the decision that it made. What factual findings were made that holiday pay can be predetermined and fixed for purposes of appropriations, what evidence was offered. Well they statements that you can do it. The, the, the finding of the board talk considered. What evidence, what was the evidence not find what was the evidence that supported those findings that it can be predetermined to be fixed for purposes of appropriations. Well they accepted the argument that that you could make that determination. You know, based on their salary, based on whether they work the holiday or not. And so you had the board accepted the arguments of the union that demonstrated that that was predetermined and fixed. Just as a follow up, I guess, the point being is that the village is just that the board just merely flip flip flopped on it's this previous position. That holiday pay was now pension. But again, that determination was not based on all the newly presented evidence that was brought in at the hearing in March of 2019. And ultimately the board's actions were driven by the totality of that, you know, material, including the DOI audit from 2009. And, and the, and the new facts that were presented. As noted by the trial court. The Department of Insurance 2009 pension audit should be given the most weight, where it concluded that how they pay should have been considered happen station. And after briefing, and the arguments before the trial court trial court affirmed the board's finding that holiday holiday pay was pensionable under all the facts and circumstances of this particular case, and that the board's decision was not clearly erroneous. Well, we review the board's decision. I appreciate that distinction. But still, we all I was suggesting was that the court looked at what in from the briefing that we put before the trial court. How the, how the pension board interpreted the material that was, was, was put into evidence at the hearing the joint exhibits of both in agreement by both counsel. And at that time is when, and they had an opportunity to review that documentation. Prior to the actual hearing. No discussion of of the material took place, but they did have an opportunity to go through the luminous section of material that was presented to us as I apologize for interrupting your time is up. Does either justice have any additional questions. No. Just briefly. Section 1. Holiday funders under the cold holiday paid is not. I mean, I had trouble hearing your first part of your question justice for that provision of the of the pension for provides that ordinarily I mean a pension board can apply this, but traditionally holiday paid is not considered fixed salary, correct. Well, the termination in the, in the facts before this case and what the board had to consider our position is that it was determined to be fixed and satisfied that requirement. Thank you. And you may proceed. Thank you, just to make a few follow up points. When you're considering fixed and predetermined don't also lose sight of the regularly received standard, which is also in the regulations. Keep in mind that salary must also be received regularly and attached to the rank or class, to which the police officer is assigned. Now, even if you can somehow get past these legal gymnastics with respect to the fixed issue. When an officer doesn't receive holiday pay in 2015. How can you possibly argue that that compensation is received regularly. I understand Mr reamers arguments about how there were nine holidays in an obviously if you forfeit or are not eligible for one of those holidays, you can calculate that there are eight holidays or seven holidays, but at that point it's not received regularly. Regular for purposes of this part under section for 402 30 means a scheduled payment, the schedule, maybe annually quarterly monthly or on another basis. Well, wasn't the schedule set out in the contract. The the nine holidays, to which they were entitled, but the standard is received. It's not whether it's set forth it's whether it's received and clearly officers are receiving some different amount in 2015 versus 2016. Going back to justices bridges is our, I'm sorry, excuse me, going back to a question that justice bridges asked me earlier about section 4402 35, and I see where he says that it seems like holiday paid might under that regulation, always be considered pensionable. However, if you look at the preamble of that regulation. It also states that the following types of pay are considered salary in accordance with the definition of section 4402 30. So I think you still have to in for holiday pay to be qualified under this particular regulation, it still has to qualify under the fixed predetermined and regularly received standard under section 4402 30. I also note that the actual statute. Section 3125.1 of the pension code seems to exclude any sort of overtime pay holiday pay bonus pay merit pay or any other cash benefit, not included in the salary so established. So there's actually solid statutory language or seems to insinuate that holiday pay is not considered salary. But I'm sorry go ahead. And that might create a solution that holiday pay is not pensionable but the pension board can override that can they not have jurisdiction to make decisions about whether it's pensionable or not, but they still have to follow the law. I mean that's why we're here because there's a, the ability to actually challenge whether a pension board is defining the pension code correctly. It would be, you know, the pension board can't just do whatever it wants. I mean, under that argument, the pension board could establish that every officer had a million dollar salary. Of course that's not accurate because no officer did receive a million dollar salary. So, yes, the pension board surely has discretion to make these sorts of salary determinations, and to try to define the pension code, but there is an appeal mechanism. And, you know, we're talking about the Roselle case with respect to the deference issue on the opinion letter, but I mean that's a similar situation where a pension board was trying to figure out whether my recollection and I know Mr. better than I do that particular case involved a situation where a surviving spouse was trying to figure out whether they were entitled to some sort of increased percentage on an annual basis, and that pension board was trying to interpret the pension code related to that provision. And at the end of the day, the Department of Insurance had a different opinion on what that interpretation was. And that's what you need to give substantial deference to. Does either justice have any additional questions. Do not. And I have none. Thank you. The court thanks all parties for their arguments here this morning. The case will be taken under advisement and a disposition will be rendered in due course. Mr. Clerk, you may close the case and terminate these proceedings. Thank you all. Have a good day.